UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFF BEMER,

        Plaintiff,

  v.

CORRECTIONAL MEDICAL SERVICES
INC., PRISON HEALTH SERVICES, INC.,
HARRIS, LUGWIG, ANDERSON,
K. NIMR IKRAM, M. WOLCOTT,
DEBORAH CARY, AUDBERTO C.
ANTONINI, KRISHN MOHAN,
MAUREEN N. ONUIGBO, JOHN R.
KEARNEY, ASIKALA VEMULAPALLI
and OTHER UNKNOWN INDIVIDUALS,
in their individual and official capacities,

        Defendants.

CIVIL ACTION NO. 10-12228

DISTRICT JUDGE STEPHEN J. MURPHY III

MAGISTRATE JUDGE MARK A. RANDON

_____/

## REPORT AND RECOMMENDATION TO GRANT THE MOTIONS TO DISMISS AND/OR FOR SUMMARY JUDGMENT OF DEFENDANTS IKRAM (DKT. NO. 17) AND WOLCOTT (DKT. NO. 45)

This is a prisoner civil rights action brought under 42 U.S.C. § 1983. Plaintiff Jeff Bemer, a former Michigan prisoner, filed suit against thirteen defendants alleging they were deliberately indifferent to his foot injury in violation of the Eighth Amendment to the United States Constitution (Dkt. No. 1). Defendants K. Nimr Ikram (a doctor of osteopathy) and Melva Wolcott (a certified nurse practitioner) have filed separate motions to dismiss and/or for summary judgment (Dkt. Nos. 17, 45). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed

the issues presented (Dkt. Nos. 29, 49) and the undersigned heard oral arguments on November 2, 2010, and December 14, 2010. Since the undersigned finds that the moving Defendants' treatment of Plaintiff's injury was not deliberately indifferent or grossly negligent as a matter of law, **IT IS RECOMMENDED** that both motions be **GRANTED.**

## I.  FACTS

On or about June 7, 2007, Plaintiff, then an inmate at the Southern Michigan Correctional Facility ("JMF"), injured his right foot playing baseball (Dkt. No. 1, ¶ 22). Plaintiff alleges that his repeated requests for medical attention over the next three days went unanswered until he was seen by Defendant Deborah Cary, a nurse, on or about June 10, 2007 (*id*. at ¶ 29). Plaintiff alleges that Cary applied ice to his injury "for 30 minutes; elevated the injured area; provided an ace wrap; recommended no weight bearing; and recommended two tablets of 200 mg ibuprofen for three days" (*id*. at ¶ 31). The instant motion involves the treatment provided by N.P. Wolcott and Dr. Ikram.

**A. Treatment by N.P. Wolcott**

Nurse Practitioner ("N.P.") Wolcott treated Plaintiff just once relative to his foot injury. On June 11, 2007, N.P. Wolcott conducted a physical examination of Plaintiff and ordered an x-ray of his right foot and ankle. As requested, a radiology report was prepared by Michael Henderson, D.O., indicating Plaintiff had suffered a "non-displaced fracture of the fifth metatarsal bone"[1] (Dkt. No. 45, Ex. 2). The x-ray also showed "old trauma of both malleoli with

---

[1] In a non-displaced fracture, the fractured bone segments have not moved out of alignment. *See* www.mdguidelines.com/fracture-ankle. The fifth metatarsal is the bone that runs between the tarsus (mid-foot) and the base of the small phalange (toe) on the outside of the foot. *See* Dorland's Illustrated Medical Dictionary (31st Ed.) 2007, p. 1162.

arthritic changes of the ankle articulating surface" (*id.*). After reviewing the report, N.P. Wolcott immobilized Plaintiff's injury using an OCL® splint[2] and entered the following orders for the management of his condition: (1) Motrin, (2) crutches; (3) "lay in" status until evaluated by orthopedics; and (4) an ice pack to be placed on the injury for 20-30 minutes every 1-2 waking hours (*id.*). N.P. Wolcott also noted that a follow-up should take place by the Medical Service Provider ("MSP") for an orthopedics referral and that Plaintiff should report "any increase in pain, numbness, tingliness (sp) or other concerns to MSP" (*id.*). On June 17, 2007, Defendant Mohan (identified by Plaintiff as a physician) referred Plaintiff for an orthopedic evaluation.

**B. Treatment by Dr. Ikram**

Dr. Ikram saw Plaintiff twice regarding his injured foot. On July 5, 2007, Dr. Ikram conducted a physical examination of Plaintiff and made the following observations: pain to palpation of the fifth metatarsal; some bony prominence along the medial malleolus; a decreased range of motion of the ankle; and that he (Plaintiff) is intact to the right lower extremity (Dkt. No. 17, Ex. 2). Dr. Ikram also reviewed x-rays which showed a healing fifth metatarsal fracture along with some degenerative changes to the ankle (*id.*). During the July 5, 2007 visit, Dr. Ikram provided Plaintiff with a "fracture boot"[3] and cleared him to return to work (Dkt. No. 1, ¶¶ 46, 47). Plaintiff was to follow-up with Dr. Ikram in four weeks (Dkt. No. 17, Ex. 2).

---

[2] OCL is a brand of Plaster Splint Roll.

[3] A fracture or walking boot is used to protect the fracture site but also allows weight bearing on the foot as well as walking. Certain fractures of the fifth metatarsal can be treated with a walking boot. *See* Jonathan Cluett, M.D., *Avulsion Fracture of the Fifth Metatarsal*, (updated Dec. 12, 2006) http://orthopedics.about.com/cs/lowerfx/g/ fifthmetatarsal.htm.

Plaintiff next saw Dr. Ikram during a follow-up visit on August 2, 2007 (Dkt. No. 17, Ex. 3). Plaintiff reported that he was doing well and the pain was getting better (*id.*). According to Plaintiff, another x-ray, taken at the request of Dr. Ikram, showed that Plaintiff's fifth metatarsal fracture was "incompletely healed" (Dkt. No. 1, ¶ 50). The medical record, however, reflects that Dr. Ikram viewed the x-ray as showing the fracture was "healing/healed" (Dkt. No. 17, Ex. 3). Dr. Ikram advised Plaintiff that he could still use the fracture boot as needed over the next three months (*id.*).

Plaintiff's complaint does not allege that either of the moving Defendants were aware of Plaintiff's need for medical attention before they provided him treatment.

## II. ANALYSIS

### A. Standard of Review

#### 1. *Motion to dismiss*

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. As the Supreme Court has recently made clear, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), quoting *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1974 (2007). Although the pleader is given the benefit of the doubt as to inferences that can be derived from the allegations, that deference "does not extend to facts which are not 'well-pleaded.'" *Greenberg v. Compuware Corp.*, 889 F.Supp. 1012, 1015-1016 (E.D. Mich. 1995).

### 2. *Summary judgment*

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3rd Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. If the moving party can make such a showing, then the burden shifts to the nonmoving party to present evidence that a genuine fact issue exists and a trial is necessary. *Id.* at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. *Id.* at 251-52.

**B. Eighth Amendment Denial of Adequate Medical Care**

Distilled to its essence, Plaintiff's response contends that his complaint sufficiently states a claim for violation of the Eighth Amendment and gross negligence against the moving Defendants, and that the moving Defendants' motion for summary judgment is premature, as Plaintiff has been denied sufficient discovery. As discussed below, Plaintiff's "lack of discovery" response to the moving Defendants' motion for summary judgment is unavailing, and the undersigned finds that neither Dr. Ikram nor N.P. Wolcott was deliberately indifferent or grossly negligent concerning Plaintiff's injury as a matter of law. As such, the undersigned need not consider the sufficiency of Plaintiff's complaint under Rule 12(b)(6).

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To succeed on a claim of deliberate indifference, Plaintiff must satisfy two elements, an objective one and a subjective one. *Wilson*, 501 U.S. at 300. The objective element is satisfied by a showing that Plaintiff had a serious medical need. *Wilson*, 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825 (1994). "To satisfy the subjective component, Plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693,

703 (6th Cir. 2001), citing *Farmer*, 511 U.S. at 837. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). Nor is Plaintiff entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Moreover, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

In this case, while Plaintiff's medical need was serious, it was not ignored by either Dr. Ikram or N.P. Wolcott. Both Defendants requested and reviewed x-rays and attempted to immobilize the site of the non-displaced fracture through an OCL® splint (N.P. Wolcott)[4] or fracture boot (Dr. Ikram). N.P. Wolcott also prescribed Motrin, placed Plaintiff on lay-in status, provided crutches and indicated that Plaintiff should ice the injury site on regular intervals during his waking hours. Plaintiff, thus, clearly received some medical treatment from both Dr. Ikram and N.P. Wolcott and the general principle of disfavoring judicial second guessing of the medical

---

[4] Plaintiff suggests through argument – not affidavit – that N.P. Wolcott made no effort to immobilize his fracture by claiming that she did "not even put an ace wrap" on his injury (Dkt. No. 49, p. 15). This argument, however, is at odds with the medical record that indicates N.P. Wolcott stabilized the injury site with a splint (Dkt. No. 45, Ex. 2).

treatment provided applies unless the treatment was "so cursory as to amount to no treatment at all" or was "grossly inadequate." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002) (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir.1989)); *McCarthy v. Place*, 313 Fed.Appx. 810, 814- 815 (6th Cir. 2008) (a question of fact exists as to whether a prison dentist, who for seven months treated an inmate complaining of intense pain due to a cavity with only ibuprofen – instead of filling the cavity – was deliberately indifferent)

A reasonable jury would not conclude that N.P. Wolcott and Dr. Ikram's treatment of Plaintiff was cursory or grossly inadequate. Grossly inadequate medical care is that which is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Terrance*, 386 F.3d at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033). An accepted treatment option for non-displaced fractures of the fifth metatarsal is to allow them to heal with immobilization.[5] *See Hines v. Secretary of Health and Human Services,* 940 F.2d 1518, 1526 (Fed. Cir.1991) ("[w]ell-known medical facts are the types of matters of which judicial notice may be taken.") (citing *Franklin Life Insurance Co. v. William Chapman & Company,* 350 F.2d 115, 130 (6th Cir. 1965)*, cert. denied,* 384 U.S. 928 (1966)). Here, it is uncontested that, after ordering and reviewing x-rays, the moving Defendants took steps to immobilize Plaintiff's injury. Under these circumstances, the appropriateness or adequacy of the selected treatment is not properly second guessed by the Court and is, at best, a claim for

---

[5] *See* Lawrence SJ, Botte MJ., *Jones' Fractures and Related Fractures of the Proximal Fifth Metatarsal*, Foot Ankle. 1993 Jul-Aug; 14(6):358-65. Review. PubMed PMID: 8406253; Gary B. Fetzer, MD and Rick Wright, MD, *Metatarsal Shaft Fractures and Fractures of the Proximal Fifth Metatarsal*, Clinics in Sports Medicine, vol. 25:1 (Jan. 2006), *available at* http://www.mdconsult.com/das/article/body/235636455-3/jorg=journal&source=&sp=15902327&sid=0/N/506942/1.html?issn=02785919&_returnURL=http%3A//linkinghub.elsevier.com/retrieve/pii/S0278591905000803%3Fshowall%3Dtrue.

negligent treatment – which does not constitute unconstitutional deliberate indifference. *Estelle*, 429 U.S. at 106.

## C. Gross Negligence

The standard for deliberate indifference and the standard for gross negligence are different. Gross negligence is a less stringent standard. *Jones v. Muskegon County*, 625 F.3d 935, 947 (6th Cir. 2010). However, under Michigan law, gross negligence still requires "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. § 691.1407(2)(c). For the reasons stated above, no reasonable jury would find that the moving Defendants undisputed treatment of Plaintiff meets even the less stringent standard of gross negligence.

## D. Further Discovery is Unnecessary

Finally, although Plaintiff argues that the moving Defendants' motion is premature, he did not file an "affidavit," with respect to either motion, showing the specific reasons he "cannot present facts essential to justify" his opposition to the motion. Fed. R. Civ. P 56(f). A party may move for summary judgment "at any time until 30 days after the close of discovery." Fed. R. Civ. P. 56(c)(1)(A). And, Plaintiff did not deny by affidavit – which he clearly could have – that he received the treatment indicated in the medical records attached to the moving Defendants' briefs.

## IV.   RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that the moving Defendants' motions for summary judgment (Dkt. Nos. 17, 45) be **GRANTED.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: February 23, 2011

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 23, 2011.

s/Barbara M. Radke<br>
Judicial Assistant to Magistrate Judge Mark A. Randon